## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **v.** | } | |
| | } | **Case No.:  2:19-CR-00516-RDP-SGC-1** |
| **RAYMOND DEJUAN SHINE,** | } | |
| | } | |
| **Defendant.** | } | |

### MEMORANDUM OPINION

This matter is before the court on Defendant Raymond Shine's Motion to Suppress. (Doc. # 12). Defendant is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Doc. # 6). Defendant argues that this charge is based on evidence obtained through an unconstitutional search and seizure. After careful consideration of the briefs submitted on this matter, testimony presented at the suppression hearing on August 3, 2020, the parties' joint stipulation of facts (Doc. # 26), and the video evidence (Doc. # 28-1, Police Video), the court concludes that Defendant's Motion to Suppress (Doc. # 12) is due to be denied.

## I.    Factual Background

On July 28, 2019 at approximately 9:45 p.m., officers of the Birmingham Police Department ("BPD") were dispatched to 7536 67th Court South in Birmingham, Alabama. (Doc. # 14-1). Upon the officers' arrival, they found a four-year-old female with a gunshot wound to the head. (Hr'g. Tr. 2:10-12). A short time after, Detective Mark Green of the Homicide Unit of the BPD arrived on the scene to investigate. (Hr'g. Tr. 2:14-16).

Detective Green spoke to other officers who were present at the scene. (Hr'g. Tr. 16:17-17:18). He later spoke with the victim's father, Michael Coleman, at the hospital where the victim

was being treated. (*Id.*). Coleman informed Detective Green that Defendant came to 7536 67th Court South via an alleyway in a black Jeep Wrangler with no doors. (Hr'g. Tr. 22:8-15). Defendant then exited the Jeep, grabbed Coleman's arm, and stated "you think it's a game?" Coleman replied "cuz, you're going to shoot me," and then Defendant started shooting. (Hr'g. Tr. 19:5-20:11). Defendant got back into his vehicle and drove away. (Hr'g. Tr. 20:12-21). Officers responded to the shooting and questioned people that were in the area at the time of the shooting. (Hr'g. Tr. 3:18-25). Other witnesses told Detective Green that the black Jeep Wrangler fled the scene with a flat tire. (*Id.*). The gun that Defendant used at 67th Court South was a silver handgun. (Hr'g. Tr. 26:20-21). A BOLO ("Be on the Lookout") notice was issued for the Jeep. (Hr'g. Tr. 22:20-21).

On July 29, 2019 at approximately 12:20 a.m. (over two and one-half hours after officers responded to the shooting), BPD Officers Fleming and Wilson noticed a AAA wrecker service truck preparing to tow a Jeep matching the BOLO description. (Hr'g. Tr. 4:13-24). The officers approached the Jeep, which was parked in a lot adjacent to 7730 Madrid Avenue. (Doc. # 28 at 2, ¶ 7). Detective Green then became aware that the officers located a vehicle matching the BOLO notice. (Hr'g. Tr. 35:4-7).

As is common when a vehicle matching a BOLO notice is found, the officers further investigated the circumstances. (Hr'g. Tr. 23:19-24:3). They found one male sitting in the driver's seat of the Jeep and another male leaning against the AAA truck. (Hr'g. Tr. 24:4-8). They first spoke to the individual in the Jeep, who identified himself as Marcus Smith. (Doc. # 28 at 1, ¶ 1). Mr. Smith told the officers that he was there to help look for tools to change the flat tire on the Jeep. (Doc. # 28 at 2, ¶¶ 5, 6). The second individual told the officers that his driver's license was in his back pocket. (Doc. # 28 at 2, ¶ 8). The officers then identified the second individual,

Defendant Raymond Dejuan Shine, as the suspect wanted for the shooting at 67th Court South and arrested him. (Doc. # 28-1 at 20:00).

While officers were at the Madrid Avenue location, Sherry Shine, Defendant's spouse arrived and identified the second individual as Defendant. (Doc. # 14-1 at 1). Sherry Shine stated that Defendant lived in 7730 Madrid Avenue, Apartment D. (*Id.*). She further informed the officers that she owned the Jeep but had loaned it to Defendant at approximately 8:30 p.m. on the night of the shooting. (Hr'g. Tr. 30:17-21).

During their inspection of the Jeep, the officers found a purple and black Walther CCP 9mm pistol (not the silver handgun connected with the shooting), which was in plain view on the front passenger's seat. (Hr'g. Tr. 26:3-7). They also discovered a cell phone on the bed of the tow truck.[1] (Doc. # 28 at 2, ¶ 9). Smith and Defendant were patted down and transported to the BPD. (Hr'g. Tr. 7:23-25, 29:20-21). The officers did not recover any weapons or cell phones. (Hr'g. Tr. 29:22-25, 30:3-4). Because the silver handgun identified by Coleman was outstanding, Detective Martin, using information relayed to him by Detective Green, drafted a search warrant application for 7730 Madrid Avenue, Apartment D ("Madrid Warrant"). (Doc. # 14-1 at 1); (Hr'g. Tr. 32:17-25). Along with describing the crime being investigated, its connection to Defendant, and the vehicle found at Madrid Avenue, Detective Martin's affidavit stated that "the three males had gotten tools from some unknown location believed to have come from the suspect's apartment." (Doc. # 14-1 at 1). The application indicated that "the weapon used by the suspect and possibly his cell phone or electronic devices that could have evidence of the crime being investigated" was believed to be inside 7730 Madrid Avenue, Apartment D (that is, Defendant's apartment). (Doc.

---

[1] Officers discussed the location of Defendant's cellphone, which was left on the tow truck and then moved to the Jeep. (Doc. # 28-1 at 38:35); (Doc. # 28 at 3, ¶ 11). Both parties acknowledge that the BPD Evidence Technician Report identifies a silver Samsung cell phone that was recovered from the left fender of the Jeep. (Doc. # 28 at 3, ¶ 11).

# 14-1 at 1).

During the execution of the warrant, law enforcement officers recovered a Mossberg 715T .22 caliber rifle from Apartment D. (Hr'g. Tr. 9:19-24). Task Force officer James Keith conducted a review of Defendant's criminal history and discovered previous convictions for felony possession of cocaine and second-degree assault. (Doc. # 1 at 5). Based on the felony convictions, law enforcement personnel had reason to believe that Defendant was aware that he is a convicted felon and thus prohibited from possessing any firearms (including the Mossberg rifle). The Government charged Defendant with violating 18 U.S.C. § 922(g)(1). (Doc. # 1 at 1).

## II.    Discussion

Defendant's Motion seeks to exclude the Mossberg .22 caliber rifle recovered during execution of the warrant. Specifically, Defendant contends that the warrant was issued in violation of the Fourth Amendment for lack of probable cause because it was based on false and/or misleading information.

The Fourth Amendment provides "[t]he right of the people to be secure...against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The Supreme Court has repeatedly emphasized "that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment."[2] *Katz v. United States*, 389 U.S. 347, 357 (1967) (citations omitted) (quoting *United States v. Jeffers*, 342 U.S. 48, 51, 72 (1951)) (internal quotation marks omitted). These "per se" unreasonable searches and seizures are subject to the exclusionary rule, which mandates that "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United*

---

[2] This rule is subject only to a few specifically established and well-delineated exceptions, and none apply in this case. *Katz*, 389 U.S. at 357; *see Missouri v. McNeely*, 569 U.S. 141, 150 n.4 (2013).

*States v. Calandra*, 414 U.S. 338, 347 (1974). "The rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *Id.* Because the exclusionary rule serves a deterrent purpose, evidence obtained without probable cause where an officer "engage[d] in 'objectively reasonable law enforcement activity'" falls into the "good faith exception" to the exclusionary rule. *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002).

Defendant argues that the evidence seized from the warrant should be suppressed because the following statements made by Detective Martin were false and/or misleading:

> The three males had gotten tools from some unknown location believed to have come from the suspect's apartment . . . The suspect's wife . . . was able to verify that the suspect did live at that location. At the time that the suspect was picked up he did not have a shirt on. At this time the weapon used by the suspect and possibly his cell phone or electronic devices that could have evidence of the crime being investigated is outstanding and believed to be [in Defendant's apartment].

(Docs. # 14, 14-1 at 1). Although Defendant had not provided any evidence that Detective Martin had made any "false" or "misleading" statements, either knowingly and intentionally or with reckless disregard for the truth, the court held a suppression hearing on August 3, 2020.[3] In that hearing, Defendant was given every opportunity to challenge the statements in the search warrant affidavit and present additional evidence to support his claim.

The Government also contends that Defendant failed to proffer any evidence supporting his allegation at the hearing. Alternatively, the Government asserts that even if Detective Martin

---

[3] The court notes that a hearing was not required and that Defendant failed to meet his preliminary burden. To be granted an evidentiary hearing (also known as a *Franks* hearing), a challenger of the affidavit's validity has the burden of showing "deliberate falsehood or reckless disregard for the truth" with an offer of proof in support— "allegations of negligence or innocent mistake are insufficient." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Thus, such allegations "should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *United States v. Haimowitz*, 706 F.2d 1549, 1556 (11th Cir. 1983) (quoting *Franks*; internal quotations omitted). Prior to the hearing, Defendant failed to show evidence of deliberate falsehood or reckless disregard of the truth.

made false and/or misleading statements in his affidavit (and, to be clear, the Government denies that is the case), those statements were unnecessary to establish probable cause and, in any event, would otherwise fall into the good faith exception.

The court finds that there was probable cause to search Defendant's apartment for evidence of the shooting at 7536 67th Court South. Alternatively, even if there was not probable cause, the execution of the warrant clearly falls into the good faith exception of the exclusionary rule. Thus, Defendant's Motion to suppress the Mossberg .22 caliber rifle is due to be denied.

### A.   Probable Cause Existed for the Madrid Warrant

A search warrant is invalid without probable cause. *Kentucky v. King*, 563 U.S. 452, 459 (2011); U.S. Const. amend. IV. Probable cause exists where "there is a fair probability that contraband or evidence of a crime will be found in a particular place," and a reviewing court must ascertain whether the issued warrant provided a "substantial basis" for finding probable cause. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983).  Probable cause is a "fluid concept" based on the "probabilities in particular factual contexts." *Id*. at 232.

Specifically, in establishing a substantial basis for probable cause to search a residence, an affidavit supporting a warrant application must connect the suspect to the residence *and* that residence to evidence or objects related to suspected criminal activity. *Martin*, 297 F.3d at 1314. This nexus between the suspected criminal activity and the residence may be established either by direct observation or by inference based on the circumstances. *United States v. Tate*, 586 F.3d 936, 943 (11th Cir. 2009).

Importantly, affidavits in support of a search warrant carry a presumption of validity. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Courts "must not critique the supporting affidavit in a hyper technical manner" and must consider probable cause with "a realistic and common sense

approach." *United States v. Underwood*, 2011 WL 2036498, at *1 (M.D. Fla. May 24, 2011) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). This standard is designed to promote "great deference" to the issuing judge's probable cause determination so that a reviewing court should uphold even "marginal or doubtful cases." *United States v. Robinson*, 62 F.3d 1325, 1331 (11th Cir. 1995); *United States v. Nixon*, 918 F.2d 895, 900 (11th Cir. 1990); *see United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994) (citing *Gates*, 462 U.S. at 236-37). And, where a Defendant contends that specific parts of an affidavit are false and/or misleading, the "subject of alleged falsity…[should be] set to one side," and the court should evaluate the remaining subject for probable cause.[4] *Franks*, 438 U.S. at 171-72.

Again, there is a lack of evidence supporting the Motion. Nevertheless, even if the court were to set aside those portions of Detective Martin's affidavit that Defendant alleges are false and/or misleading—the cell phone, the shirt, the tools, and the source of the fact that Defendant lived at Apartment D—there was probable cause for the warrant. The affidavit, when viewing the facts and circumstances with a "realistic and common sense approach," establishes a "fair probability" that evidence of the shooting at 67th Court South could have been in 7730 Madrid Avenue, Apartment D. The affidavit contains four key facts: (1) officers were investigating a shooting, and the father of the shooting victim identified a suspect; (2) officers found the suspect and a vehicle matching the description of the suspect's vehicle two and one-half hours after the shooting at 7730 Madrid Avenue; (3) the suspect lived in 7730 Madrid Avenue, Apartment D; and (4) the weapon used in the shooting was still outstanding. (Doc. # 14-1 at 1).

---

[4] The court notes, again, that it is not required to set aside the facts that Defendant alleges are false and/or misleading. *United States v. Leach*, 498 F. App'x 915, 917 (11th Cir. 2012) (explaining that a defendant must first make a "substantial preliminary showing" of falsehood and that false statement is necessary to finding probable cause before the court will set aside in evaluating probable cause).

First, facts (2) and (3) referenced above—that the officers found the suspect at the apartment complex and knew that Apartment D was the suspect's residence—establish a connection between the suspect and the residence in the warrant. Second, each of these facts (1), (2), (3), and (4)—that officers located the shooting suspect and his vehicle in front of his Madrid Avenue apartment without the outstanding weapon—when viewed together, establish a connection between Defendant's residence and the shooting because it can be inferred from the circumstances that the shooting suspect could have left or concealed the outstanding weapon in his apartment in the time between the shooting and when the officers identified the suspect in the parking lot of the apartment complex. Indeed, "[i]n normal situations, few places are more convenient than one's residence for…hiding fruits of a crime." *United States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009) (quoting *United States v. Green*, 634 F.2d 222, 226 (5th Cir. Unit B Jan. 1981)).

At the hearing, Defendant argued that the omission of Defendant's name should defeat the affidavit's validity because it did not connect the Defendant by name to the apartment. (Hr'g. Tr. 47:1-6). This argument fails. Even setting aside the fact that the suspect's wife is identified by name, the application for the warrant correctly states that the shooting suspect lived at the apartment that was to be searched.[5] Further, omitted facts will not invalidate a valid warrant where the inclusion of those facts would not defeat probable cause. *Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1997); *see United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990). Of course, the inclusion of Defendant's name would certainly have bolstered a finding of probable cause. But, despite that omission, the affidavit still contained a nexus between the suspect's

---

[5] Because the court is not required to set aside the fact that the affidavit named the suspect's wife, the court notes that an issuing judge could reasonably deduce the identity of a suspect from the suspect's wife identifying herself and stating the location of his residence. *See Leach*, 498 F. App'x at 917.

apartment, the suspect, and the crime that officers were investigating; that is all the law requires.[6]

From these facts, a "prudent person [would] believe," based on "a realistic and common sense approach," that there was a "fair probability" that the outstanding weapon would be found at the apartment in the warrant. *See Gates*, 462 U.S. at 238-39; *Underwood*, 2011 WL 2036498, at *1. The court therefore concludes, when setting aside the alleged false and/or misleading statements in the affidavit and giving due deference to the issuing judge, that the warrant was supported by probable cause. *See Miller*, 24 F.3d at 1361 (citing *Gates*, 462 U.S. at 236-37).

**B.      Moreover, the Affidavit for the Warrant was Executed in Good Faith[7]**

Even if the warrant was unsupported by probable cause, the evidence obtained is still admissible under the good faith exception. Under this exception, evidence obtained by law enforcement acting "in objectively reasonable reliance" on a warrant later found to lack probable cause is not subject to suppression. *Leon v. United States*, 468 U.S. 897, 922 (1984); *Herring v. United States*, 555 U.S. 135, 139-43 (2009).

The bar to satisfy good faith is not extraordinarily high. Indeed, "[u]nder *Leon*, 'searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search.'" *Robinson*, 336 F.3d at 1296 (quoting *Leon*, 468 U.S. at 922). This inquiry asks whether a "reasonably well-trained officer" would have known that the search was

---

[6] *See United States v. Piloto*, 562 F. App'x 907, 914 (11th Cir. 2014) (upholding district court's denial of suppression where affidavit connected crime, defendant, and residence despite inaccurately describing defendant and referring to him as "subject #1"); *cf. United States v. Hendon*, 253 F. App'x 809, 811 (11th Cir. 2007) (discussing affidavit that identified an "unknown black male…*arguably*" lacked probable cause because there was no connection in the supporting affidavit between the defendant and the location to be searched or the criminal activity); *Martin*, 297 F.3d at 1315 (discussing that an affidavit had "much to be desired" where the affidavit did not connect the defendant to the residence or the criminal activity).

[7] For purposes of the good faith exception, the Government bears the burden of proof, which may be satisfied from the face of the affidavit. *Robinson*, 336 F.3d at 1297. The court, again, notes that Defendant has failed to meet his preliminary burden to challenge a facially valid affidavit. *See Franks*, 438 U.S. at 171-72; *supra* n.3.

illegal despite being authorized by a neutral magistrate. *Leon*, 468 U.S. at 922 n.23; *United States v. Taxacher*, 902 F.2d 867, 872 (11th Cir. 1990)); *United States v. Vanbrackle*, 397 F. App'x 557, 559 (11th Cir. 2010). As our Circuit has taught us, courts should refrain from evaluating good faith based on whether "thoughtful and competent jurists" would have understood the shortcomings in the warrant. *Taxacher*, 902 F.2d at 871. And, a court may also look outside the four corners of an affidavit when determining whether an officer acted in good faith when relying on an invalid warrant. *Martin*, 297 F.3d at 1309.

Because a "warrant issued by a magistrate [judge] normally suffices to establish good faith," the "good-faith exception applies 'in all but four limited sets of circumstances.'"[8] *United States v. Whitehurst*, 614 F. App'x 411, 414 (11th Cir. 2015) (quoting *Martin*, 297 F.3d at 1313); *Leon*, 468 U.S. at 922.  These four circumstances are:

> (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*Robinson*, 336 F.3d at 1296. As explained below, none of the four circumstances exist here. To be sure, the court finds that a well-trained officer in these circumstances would not have known that the search of Defendant's apartment was illegal (but rather, believed it was supported by probable

---

[8] The Eleventh Circuit in *Martin* also opined that "[b]efore we can examine whether the *Leon* good faith exception applies in this case, we must determine whether this case fits into one of the four limited sets of circumstances where the *Leon* good faith exception does not apply." *Martin*, 297 F.3d at 1313. But subsequent cases in the Eleventh Circuit do not appear to have followed this two-step inquiry. *United States v. Whitehurst*, 614 F. App'x 411, 414 (11th Cir. 2015); *see United States v. Gonzalez*, 2010 WL 2721882, at *20 n.23 (N.D. Ga. May 25, 2010), *report and recommendation adopted*, 2010 WL 2721540 (N.D. Ga. July 7, 2010) (discussing Eleventh Circuit treatment of *Martin* in subsequent cases). Instead, courts analyze whether the four negating circumstances apply; and if they do not, the court finds the *Leon* good faith exception applies. *United States v. McClure*, 160 F. App'x 842, 844 (11th Cir. 2005) ("The *Leon* exception applies in all but four circumstances…"); *Vanbrackle*, 397 F. App'x at 559.

cause).

First, the court finds that Detective Martin's affidavit was not false nor did it mislead the judge who issued the warrant. Defendant alleges that the affiant's belief that the men had obtained tools from the apartment—that is, that they had entered the apartment at some point between the shooting and the BOLO spotting—in the warrant's application was false and/or misleading. Defendant also alleges that it was false or misleading that the affiant stated he believed the cell phone or outstanding weapon was in the apartment.

Besides Defendant's conclusory argument at the hearing, there is no evidence that Detective Martin made false or misleading statements in his affidavit, either knowingly and intentionally or with reckless disregard for the truth. *See Underwood*, 2011 WL 2036498, at *1 ("[T]he allegations advanced by Defendant's attorney, without more, cannot be considered by the Court in making up for this deficiency."). Indeed, there was no evidence that the detectives could have found that would have established that Defendant had not entered the apartment during the time between the shooting and when Defendant was identified at Madrid Avenue. In fact, it was logical to believe just the opposite.

Nonetheless, to counter Defendant's allegations, at the hearing Detective Green testified that they "had a homicide that had occurred with a named suspect who was with the vehicle that was described in the shooting. [They] still had a gun outstanding, so it's customary that [they] get a search warrant." (Hr'g Tr. 50:4-7). The parties' stipulated, based on Officer Fleming's body camera, that Marcus Smith had said that they were looking for tools to change the flat tire on the Jeep. (Doc. # 28 at 2, ¶¶ 5, 6). Detective Martin also testified that neither he nor Detective Green was aware of the officers' conversation regarding Defendant's cell phone sitting on the Jeep. (Hr'g Tr 49:1-25). Instead, they acted on information that the cell phone was outstanding (like the silver

handgun). (Hr'g Tr 49:1-25).  As discussed previously, it was perfectly reasonable for the affiant to have a belief that evidence of the crime would have been in Defendant's apartment. *See Kapordelis*, 569 F.3d at 1310. Thus, the court finds that the Government has met its burden, and the information in the affidavit was not false or misleading.

Second, there is no evidence that the issuing judge "wholly abandoned [his or her] judicial role" by issuing the warrant. *See Martin*, 297 F.3d at 1317-18 (holding that the issuing magistrate judge who issued a search warrant had not wholly abandoned his judicial role when there was no evidence that he either: (1) failed to read the affidavit; or (2) relied on a close, personal relationship with the affiant when he signed the warrant).

Third, the warrant was not facially deficient—"i.e. failing to particularize the place to be searched or the things to be seized"—that the law enforcement officers executing the warrant could not have presumably thought that it was valid. *Martin*, 297 F.3d at 1313. The warrant included the location to be searched and the items authorized for seizure. (Doc. # 26 at 3).

Fourth, Detective Martin's affidavit is not so lacking in indicia of probable cause that a reasonable officer could not have relied upon it. An affidavit lacks indicia of probable cause when it is a "statement of nothing more than conclusory allegations." *United States v. Glinton*, 154 F.3d 1245, 1257 (11th Cir. 1998) (citing *Leon*, 468 U.S. at 915). The affidavit must "clearly" lack indicia of probable cause and must not be a "close call." *Martin*, 297 F.3d at 1315 (quoting *United States v. Hodge*, 246 F.3d 301, 309 (3d Cir. 2001)). An affidavit that "sufficiently explain[s] the criminal activity…and sufficiently links the criminal activity" to a residence will satisfy this standard. *Id.* (finding that an affidavit had indicia of probable cause despite Defendant not being linked to the affidavit). As already discussed, Detective Martin's affidavit provided ample support of probable cause for the issuance of the warrant, especially when considering that Defendant's

12

wife identified his apartment, Smith admitted that they had been searching for tools prior to the officers' arrival, and as far as Detective Martin was concerned, Defendant's phone was still outstanding. Here, the court finds that it was not objectively unreasonable for Detective Martin to have believed his affidavit supported a finding of probable cause.

Further, at the hearing, Detective Martin and Detective Green testified that the affidavit was based on information they believed to be reliable and that ordinarily justifies a warrant under the circumstances. (Hr'g. Tr. 50:1-7); *see United States v. Hendon*, 253 F. App'x 809, 812 (11th Cir. 2007). The court finds that their testimony was consistent, and they relied on their experience obtaining warrants with outstanding weapons. *See Kapordelis*, 569 F.3d at 1310. Indeed, even if the warrant was invalid, "penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Leon*, 468 U.S. at 921. Thus, the *Leon* good faith exception applies.

## III.   Conclusion

For the reasons explained above, Defendant's Motion to Suppress (Doc. # 12) is due to be denied. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this September 1, 2020.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE